UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LESLIE M. PAOLUCCI, | ) | Case No.  1:08CV2109 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION & ORDER** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). Electronic Case Filing (ECF) Dkt. #1. Plaintiff contends that the Administrative Law Judge (ALJ) violated the treating physician rule and failed to appropriately evaluate her complaints of pain and credibility. ECF Dkt. #18. For the following reasons, the Court REVERSES AND REMANDS the ALJ's decision.

**I.     PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on May 27, 2003 alleging an onset date of disability beginning May 27, 2003[1] due to neck pain, possible post-traumatic stress disorder (PTSD), depression and affective disorders. Tr. at 40, 42, 59-63, 68. The Social Security Administration (SSA) denied

---

[1] At the hearing before the ALJ, Plaintiff, through her attorney, amended the onset date from February 13, 2002, the protective filing date of the application, to May 27, 2003. Tr. at 14, 473.

Plaintiff's claims and affirmed the denials upon reconsideration. *Id*. at 41-44, 47-50. Plaintiff requested a hearing before an ALJ, and at the September 8, 2006 hearing, Plaintiff testified and was represented by counsel. *Id.* at 51-52, 457. A vocational expert also testified. *Id.*

On November 27, 2006, the ALJ denied Plaintiff's application for benefits, finding that while her impairments of cervical strain, lumbar strain, PTSD, and a major depressive disorder were severe, they did not meet or equal, individually or in combination, the Listing of Impairments in 20 C.F.R. Part 4, Subpart P, Appendix 1. Tr. at 16-17. The ALJ found that Plaintiff could perform limited sedentary work existing in significant numbers in the economy. *Id.*

Plaintiff requested that the Appeals Council review the ALJ's decision but Council denied the request for review, concluding that no basis existed for changing the ALJ's decision. *Id.* at 6-8, 10. Plaintiff filed an appeal to this Court on September 2, 2008 and Defendant answered. ECF Dkt. #s 1, 12. The parties consented to the undersigned's jurisdiction on October 9, 2008 and both parties have filed briefs addressing the merits of the case. ECF Dkt. #s 11, 20, 22. At issue is the ALJ's November 27, 2006 decision, which stands as the final decision. Tr. at 14-25; 20 C.F.R. § 404.984.

## II. RELEVANT PORTIONS OF ALJ'S DECISION

In his November 27, 2006 decision, the ALJ found that Plaintiff had the severe impairments of cervical strain, lumbar strain, PTSD and a major depressive disorder. Tr. at 16. However, he found that none of those impairments, individually or in combination, met or medically equaled the Listing of Impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. *Id.*

The ALJ considered Plaintiff's complaints of disabling pain and found them not entirely credible. Tr. at 18. He also discounted the opinions of two of Plaintiff's chiropractors and two of her treating physicians, Drs. Feudo, a board-certified internist, and Dr. Huston. *Id.* at 19-20. The ALJ also stated that he credited the opinions of Dr. Tran, Plaintiff's treating psychiatrist, and Dr. Halas,

-2-

an agency examining psychologist as they were consistent with one another and with other evidence of record. *Id.* at 21-23.

In concluding that Plaintiff could perform jobs existing in significant numbers in the economy, the ALJ found that Plaintiff had a residual functional capacity (RFC) to:

> lift, carry, push and/or pull a maximum of 10 pounds and can sit for 6 hours, can stand and/or walk for 2 hours each in an 8-hour day with normal breaks. She is precluded from tasks that involve hyperextension of the neck as well as from tasks that involve use of either arm above the shoulder level. She is limited to simple, routine, low-stress, and non-public tasks.

Tr. at 18.

### III     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the following required sequential steps for evaluating entitlement to disability insurance benefits and SSI:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that other jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves conflicts, and makes a determination of disability. This Court's review of such a determination is limited by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record to support an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.     ANALYSIS

### A.     TREATING PHYSICIAN RULE

Plaintiff asserts that the ALJ violated the treating physician rule by disregarding the opinions of Drs. Feudo, Huston and Tran without good reason. ECF Dkt. #18 at 9. An ALJ must adhere to

certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [he or she] is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting

*Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

### 1. **OPINIONS OF DRS. FEUDO AND HUSTON**

Dr. Feudo's notes reflect that he treated Plaintiff six times from September 21, 2005 through at least April 2006. Tr. at 375-381. Neither the ALJ nor Defendant appear to challenge whether Dr. Feudo is a treating physician. Without a challenge, Dr. Feudo is a "treating source" and his opinions are entitled to controlling weight if he employed medically-acceptable clinical and laboratory diagnostic techniques and his opinion is not inconsistent with other evidence. *See id.*; 20 C.F.R. §404.1527(d)(2); *McKenzie*, 2000 WL 687680 at *3. Moreover, unless the ALJ has articulated reasons explaining why the opinion is not consistent with other evidence of record, remand is necessary. *Rogers*, 486 F.3d at 242.

As the ALJ noted, Dr. Feudo opined that Plaintiff could: work only 2 hours per day; stand and sit 60 minutes each at one time and per 8-hour workday; occasionally lift 5 pounds, lift no weight on a frequent basis; rotate her neck to the right or left only to a limited extent; elevate her chin only to a limited extent; bring her chin to her neck only to a limited extent; walk only 30 minutes of an 8-hour day; and bend or stoop only occasionally. Tr. at 389-390. Dr. Feudo concluded that limited spine motion was present on examination, as well as mild motor loss and chronic non-radicular pain and weakness, which caused moderate pain and the limitations that he had opined. *Id.* The ALJ discussed

Dr. Feudo's findings and opinion and rejected his opinion as to Plaintiff's limitations, finding that it was not consistent with

> the objective medical evidence, including that provided by Dr. Morgenstern, a neurological specialist, Dr. Kulka, Dr. Bertsch, and Dr. Moufawad, a pain management specialist. Furthermore, his assessment that Ms. Paolucci's pain is moderate in severity is inconsistent with his conclusion that she can't persist in full-time work.

*Id.* at 21.

The Court finds that substantial evidence does not support the ALJ's decision to reject Dr. Feudo's opinion because he fails to identify the "objective medical evidence" from the four providers which he found inconsistent with Dr. Feudo's opinion. In fact, consistent with Dr. Feudo's opinion, Dr. Bertsch, another treating physician, had opined on July 21, 2003 that Plaintiff had "some limited disability." *Id*. at 195. While he did not quantify or otherwise elaborate on the meaning of this, he did nevertheless agree that Plaintiff had some degree of disability due to her neck impairments. Also consistent with Dr. Feudo, Dr. Bertsch found that Plaintiff's cervical pain was supported by physical findings, including chronic cervical spasms. *Id*. Dr. Bertsch also referenced other objective findings supporting Plaintiff's neck pain, including a cervical MRI in early 2003, which showed a mild right paramedian disk bulging and degenerative spurring at C5-6 without cord compression. *Id.* at 195. Dr. Moufawad, a pain management specialist to whom Dr. Feudo referred Plaintiff, found that Plaintiff had limited ranges of motion in her neck, shoulders and back, and she had positive cervical root tension signs. *Id*. at 384-386. He diagnosed her with right cervical facet pain with dysfunction, cervical myofascial pain, right cervical radiculopathy, and bilateral sacro-iliac joint pain. *Id*. He referred Plaintiff for an EMG, but the ALJ indicated that Plaintiff missed the EMG appointment because she could not find anyone to stay with her disabled husband. *Id*. at 21. However, the ALJ

noted at the beginning of his decision that Plaintiff did undergo the EMG which showed right cervical radiculitis in the C6-7 myotomes but no evidence of neuropathic or myopathic processes. *Id*. at 16. Dr. Moufawad prescribed Plaintiff Oxycontin, cervical facet joint injections and a home exercise program. *Id.* at 21.

In addition, the ALJ failed to explain why he additionally rejected the opinion of Dr. Huston, a doctor who treated Plaintiff and also opined that Plaintiff was disabled due to her pain, muscle spasms and significant limited range of motion in her back and legs. Tr. at 19, 204. The ALJ merely stated that Dr. Huston had found Plaintiff disabled and his opinion was not supported by the objective medical evidence and was contrary to the opinions of Drs. Bertsch and Moufawad. *Id*. at 19.

The Court notes that the ALJ relied upon the finding and conclusions of Dr. Morgenstern and Dr. Kulka in order to justify rejecting Dr. Feudo's opinion even though Dr. Morgenstern, a neurologist, examined Plaintiff only once, on April 18, 2003, a month before Plaintiff's alleged onset date and before Dr. Feudo's treatment of Plaintiff even began. Further, the ALJ himself gave no weight to Dr. Kulka's opinions because Dr. Kulka's last treatment of Plaintiff was in 1989, thirteen years before her alleged onset date, and because he was not an "acceptable medical source" under social security regulations. Tr. at 20.

Moreover, the Court finds no support for the ALJ's implication that Plaintiff's reports to Dr. Feudo of activities that she performed were inconsistent with Dr. Feudo's opinion. The ALJ notes that Plaintiff reported to Dr. Feudo that she experienced increasing pain upon becoming the primary caregiver for her father-in-law, who was recuperating from surgery. Tr. at 20. The ALJ also cited Plaintiff's report to Dr. Feudo that she participated in an exercise program and she was able to lift her husband off of the ground after he had a seizure. *Id*. at 20. However, none of these activities show

-8-

that Plaintiff has the capacity to perform work eight hours per day, forty hours per week.  Nor do these activities contradict Dr. Feudo's opinion.  Insufficient details are provided about Plaintiff's care for her father-in-law and the ALJ did not delve into information about the length or extent of this care-giving.  Further, Plaintiff reported picking up her husband after a seizure, which hardly qualifies as a finding of inconsistency with disability since her alternative was most likely to leave him lying on the floor.  In addition, Plaintiff testified at the hearing before the ALJ that her husband moved out of the house because it was "too much" for her because he sometimes suffered grand mal seizures which would last for three to five hours where he would ask questions over and over and she could not leave her husband alone.  *Id*. at 463, 465-466.  Therefore, the ALJ was not justified in finding that Dr. Feudo's opinion was inconsistent with these notes in his treatment records.

The ALJ further found that Dr. Feudo's opinion regarding Plaintiff's work abilities was inconsistent with his conclusion that she suffered from only moderate pain. Tr. at 21.  This is also insufficient to justify rejecting Dr. Feudo's opinion.  *Id*.  A finding that Plaintiff suffers from moderate pain does not negate a finding limiting her abilities to work since this assessment of pain is not based upon Plaintiff working eight hours per day, forty hours per week.

It may very well be that the ALJ had good reasons for rejecting the opinions of Drs. Feudo and Huston.  However, the ALJ failed to follow the agency's own procedural regulation requiring him to provide "good reasons" for not giving weight to a treating physician.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), citing 20 C.F.R. § 416.927(d)(2).  Consequently, the Court remands this case for reevaluation of those opinions and adequate articulation for rejecting these opinions, should the ALJ decide to do so a second time.

### 2.    **OPINION OF DR. TRAN**

The Court also REMANDS this case for the ALJ to reevaluate and better explain his treatment of the opinion of Dr. Tran, Plaintiff's treating psychiatrist.  The ALJ credits Dr. Tran's opinions, finding that it was supported by the opinions of Mr. Halas, an agency examining psychologist, who evaluated Plaintiff and diagnosed her with depressive disorder, anxiety disorder, borderline personality disorder, and assigned her a Global Assessment of Functioning (GAF) of 45, which indicated serious symptoms.  Tr. at 21.  However, the ALJ found that the "objective medical evidence" did not provide a basis for mental limitations greater than those that the ALJ found, which were limitations to simple, routine, low-stress, non-public tasks.  *Id.* at 18.  Dr. Tran had diagnosed Plaintiff with a major depressive disorder and opined that her condition would deteriorate extremely if she were under stress, especially job stress.  *Id.* at 21, citing Tr. at 417. The ALJ further found that Plaintiff's

> mental problems appear to be more the result of stressful life circumstances ((four children, sick husband, and financial constraints (Exhibit 18F, pages 3-4)) than of pathology.  She testified that she is able to do household chores, albeit with the help of her children.  However, she noted that she has her children help her with chores to foster family involvement...Her ability to care for herself and others shows that her emotional problems, while not trivial, are not disabling.

*Id*. at 23.  The ALJ fails to explain how he credited Dr. Tran as a treating source yet imposed a low-stress limitation when Dr. Tran opined that Plaintiff's mental condition would extremely deteriorate if she were placed under stress, especially job stress.  *Id.* at 417.  Mr. Halas had also opined that Plaintiff's ability to withstand stress and pressures associates with most day-to-day work was markedly limited.  *Id.* at 201.  Further, the ALJ fails to provide support for his findings that Plaintiff's medical problems appear to be a result of "stressful life circumstances" as opposed to an underlying mental condition, especially when the medical professionals appear to find to the contrary.  The ALJ

cannot substitute his own views for the medical opinion of Dr. Tran. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). Accordingly, the Court remands the case for a reevaluation and further articulation and analysis of the ALJ's determination and treatment of Dr. Tran's opinion.

### B.  CREDIBILITY DETERMINATION

Plaintiff also asserts that the ALJ failed to appropriately evaluate her complaints of pain and erred in finding that her testimony was not credible. ECF Dkt. #18 at 15. The social security regulations establish a two-step process for evaluating pain. In order for pain or other subjective complaints to be considered disabling, there must be: (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

When a disability determination cannot be made on the basis of the objective medical evidence, an ALJ must analyze the plaintiff's credibility, considering her statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. § 416.929 and Social Security Ruling 96-7p. Subjective complaints of pain can support a disability claim if objective medical evidence of an underlying condition exists in the record. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992). Other relevant factors that the ALJ must consider include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. 20 C.F.R. 416.929(c)(3)(i)-(vi); SSR 96-7p. However, an ALJ is not required to accept a plaintiff's own

testimony regarding her pain. *Gooch v. Sec'y of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). Since the ALJ has the opportunity to observe the claimant in person, great deference is given to the ALJ's conclusion about the claimant's credibility. *McCoy o/b/o McCoy v. Comm'r of Soc. Sec.,* 81 F.3d 44, 47 (6th Cir. 1995). Nevertheless, substantial evidence must support an ALJ's assessment of a claimant's credibility. *Id.* If the ALJ rejects or discounts the claimant's complaints as not credible, he must clearly state his reasons for doing so. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).

In the instant case, the ALJ indicated that he had considered the criteria in SSR 96-7p in deciding to discount Plaintiff's complaints of pain and work-related limitations. Tr. at 18. He then recited Plaintiff's testimony concerning her impairments and the frequency, duration and intensity of her pain and limitations. *Id*. The ALJ thereafter concluded that "[a]fter considering the evidence," Plaintiff's impairments could produce symptoms, but not to the extent that Plaintiff testified and not greater than the residual functional capacity that he found. *Id*.

The Court finds that the ALJ fails to provide substantial evidence to support his decision to discount Plaintiff's testimony. While the ALJ mentions SSR 96-7p, he fails to explain how the factors supported his decision to discount Plaintiff's credibility. He mentions some of Plaintiff's daily living activities, such as caring for her disabled husband, but he fails to mention Plaintiff's testimony at the hearing that her husband had moved out of the house because it was too much for her to care for him when he suffered seizures. Tr. at 462. The ALJ mentioned that Plaintiff could perform household activities with the help of her children, but he indicated that Plaintiff noted that she has the children help in order to foster family involvement. *Id*. at 23. However, Plaintiff also testified that there are times when she cannot perform household chores, including folding clothes. *Id*. at 473. In addition,

the ALJ failed to mention the side effects that Plaintiff testified she experienced from the many strong medications that she took for pain, including Oxycodone twice a day and Soma, which caused nausea, vomiting and tiredness which required her to nap during the day. *Id*. at 462-463.

Since the ALJ failed to adequately address the factors of SSR 96-7p in order to justify his credibility finding, the Court REMANDS this issue to the ALJ for a redetermination of Plaintiff's credibility with reevaluation and further articulation as to her complaints of pain and functional limitations.

## **VI.    CONCLUSION**

Based upon a review of the record, the Statements of Error, and the law, the Court REMANDS this case so that the ALJ can properly apply the treating physician rule and reevaluate and adequately articulate the weight that he gave to the opinions of Dr. Feudo, Dr. Huston and Dr. Tran.  The Court further REMANDS this case so that the ALJ can better analyze the factors of SSR 96-7p, including the side effects of her medications, and the measures that she takes in order to reduce her pain, which could all impact her work-related abilities.  Finally, the Court REMANDS this case for a redetermination of the ALJ's RFC to the extent that it impacts his analysis.

Dated: October 21, 2009                              */s/George J. Limbert*
                                                                         GEORGE J. LIMBERT
                                                                         U.S. MAGISTRATE JUDGE